### EDWARDS v. FROST et al.

No. 5943.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1939.

Rehearing Denied June 28, 1939.

Writ of Certiorari and Review Denied Oct. 30, 1939.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellants.

A. Milling Bernstein and Clark & Thompson, all of Monroe, for appellee.

DREW, Judge.

This is a suit to recover damages occasioned by a collision in which four automobiles were involved. J. M. Edwards sued to recover damages caused him when his automobile was damaged, and for the amount of medical and hospital bills he paid on account of injuries his minor daughter received in the accident. He also claims damages for future medical and

hospital bills to be incurred in treatment of his minor daughter, and for the use and benefit of his minor daughter for the injuries she received and for her pain and suffering. He made defendants, A. S. Frost, the driver and owner of the car which collided with plaintiff's car; Maryland Casualty Company, Frost's liability insurer; and Ralph Holloway, the driver and owner of the car which collided with the Frost vehicle.

Judgment was rendered below in favor of plaintiff and against all defendants, in solido, in the following amounts: For J. M. Edwards, individually, in the sum of $387.17, with five per cent per annum interest from judicial demand; and for J. M. Edwards for the use and benefit of his minor daughter, Caroline French Edwards, in the sum of $5,000, with five per cent per annum interest from judicial demand.

Ralph Holloway has not appealed. The other two defendants have appealed suspensively from the judgment rendered below.

The accident occurred on Highway 80 between the towns of Rayville and Holly Ridge, between the hours of eight and eight-thirty P. M. Mr. Edwards, who lives at Holly Ridge, was, at about eight P. M., called on to pull a truck out of the ditch at a point on the Dixie-Overland Highway, No. 80, between his home and Rayville, Louisiana. The highway is a standard paved concrete road and, at the point where the truck was in the ditch, is level and straight for a long distance both east and west. The highway runs almost due east and west. On this particular occasion the weather was clear and the pavement dry. Soon after being called, Mr. Edwards sent a truck in charge of Cotton Fuller to the scene of the troubled truck. Soon thereafter he followed in a Plymouth sedan owned and driven by Earl Rogers. Immediately behind him and following him to the scene were Mr. Edwards' daughter, Caroline French Edwards, and her escort, Lee Ineichen, in Mr. Edwards' Plymouth car. Miss Edwards, Earl Rogers and Lee Ineichen intended to continue on to Monroe to attend a dance. After arriving at the place where the truck was in the ditch the two Plymouth cars were parked on the north side of the highway, on the shoulder about two feet off the pavement, both cars headed west, the Rogers car in front and the Edwards car from five to ten feet behind it. All lights were burning on the two cars. Approximately 20 feet west of the two parked Plymouth cars, the truck was in the ditch on the south side of the highway. The truck sent out by Mr. Edwards was also on the south side of the highway, both trucks entirely off the pavement and headed east. The Edwards truck was ahead of the ditched truck and in position to tie to it and attempt to pull it out. Both trucks had their lights on.

As soon as Mr. Edwards arrived at the scene he and Rogers got out of the car and, with the assistance of a negro, placed flares out, one 60 feet east of the trucks on the south side of the highway, one 60 feet west of the trucks on the south side of the highway, and one approximately 40 feet east of the Edwards Plymouth car on the north side of the highway. The flares were placed on the edge of, or on the shoulder near the edge of, the pavement. After the flares were in place Rogers got into the rear seat of the Edwards car and was conversing with Miss Edwards and Ineichen, who occupied the front seat of said car, when the accident occurred.

Defendant Frost's car was traveling in a westerly direction and when it was near the Edwards car it partially left the pavement on the north side and ran into the rear of the Edwards car. The Frost car was rammed from the rear by a car driven by defendant Holloway, who was also traveling west. The force of the impact drove the Edwards vehicle into the rear of the Rogers car and both were forced 10 to 20 feet west into a post and into the ditch on the south side of the highway. The Frost vehicle continued west and came to a stop some 20 to 40 feet west of where the Edwards Plymouth stopped, and the Holloway car came to a stop approximately ten feet east of the Edwards car.

At the time of the collision Miss Edwards was seated on the front seat of her father's automobile, with one arm on the back of the seat and one leg tucked under her, in order that she might face both escorts during their conversation. The collision threw Rogers from the back seat onto the front seat, and threw Miss Edwards' back against the dashboard with sufficient force to break off the instrument knobs thereon and to throw her to the floor of the car. The back of the front seat was badly bent. Miss Edwards was seriously injured.

There is no dispute over the facts thus far. There is a dispute as to whether the Frost vehicle struck the Edwards automobile before or after the Holloway car struck the Frost car; or whether the Edwards car was rammed by the Frost car and the latter by the Holloway car simultaneously. There is also a dispute over the location, as to the pavement, of the Frost vehicle before being rammed by the Holloway car. The lower court, after describing the scene of the accident as we have above, found:

"The situation as described constituted a danger zone, which was clearly visible to anyone approaching on the highway from either direction. Defendant A. S. Frost was travelling at a moderate rate of speed in a Plymouth pick-up truck in a westerly direction. As he approached the scene he slowed down, came almost to a stop and pulled partially off the pavement just before he reached plaintiff's car, thus placing his car half on and half off the pavement just to the rear of the Edwards car. He evidently pulled off the pavement between the flare on the north side and the parked sedan. He testified that he did not intend to stop, but intended to continue on through the danger zone.

"Just at about the instant that Frost reached the Edwards car, he was struck from behind at the left side of the rear end of his car by a Chevrolet sedan driven by Ralph Holloway. The Frost truck was in turn driven into the left rear of the Edwards car, causing the damage complained of here. The Frost car had practically reached the Edwards car when it was struck by Holloway, as none of the witnesses heard more than one crash. The Edwards car was knocked against the Plymouth sedan parked ahead of it but nothing is claimed in this suit on account of any damage to that car.

"From all of the testimony the defendant Holloway was evidently driving quite fast, was not keeping a proper lookout and is clearly liable. There is some testimony that Frost did not have a tail light burning but this point seems to have been abandoned by plaintiff as an act of negligence on the part of Frost. In fact plaintiff seeks to recover from defendants Frost and Maryland Casualty Company on the ground that Frost was negligent in driving up to the immediate rear of plaintiff's car, with his car partly on and partly off the pavement, and that this negligence was causally connected with the accident.

"We think there is merit to plaintiff's contention. Mr. Frost properly reduced his speed in going through this danger zone, but he was negligent in getting off the pavement and in approaching too near to plaintiff's car. If he had intended to stop, he should have done so either before he reached the first flare or after passing entirely through the danger zone. He did not intend to stop and therefore he should not have pulled off the pavement at all, for there could be no reason for doing so, but on the contrary when he did pull partially off he merely placed his car in position to do damage to plaintiff's sedan. In all events, it was clearly negligent for him to pull partially off the pavement within the 60 feet between plaintiff's car and the flare when he did not intend to stop.

"In a case of this kind, involving three cars, where one party sues the other two, it is not necessary for plaintiff to show which of the two was guilty of greater negligence. In this case we might readily say that Holloway was more negligent than Frost, and still plaintiff might recover against both. Holloway was negligent in striking Frost's car, but Frost was negligent in placing his car in a position to cause damage to plaintiff's car.

"If Frost had pulled entirely off the road and stopped, or if he had kept his car in its proper position on the right hand side of the pavement, plaintiff would have received no damage. In the latter case, he may have been struck from behind by Holloway but plaintiff's car would not have been struck by his (Frost's) truck. It thus appears that Frost's negligence was causally connected with the accident."

Appellants complain of the lower court finding as a fact that the impact of the Holloway car with the Frost truck was simultaneous, or practically so, with the impact of the Frost vehicle with the Edwards car. And also complain of the finding as a fact that the Frost truck was half off and half on the pavement when collided with by the Holloway car. The preponderance of the evidence is, however, in accord with the facts found by the lower court. All the witnesses are in accord in that the only noise made was that of one impact. Earl Rogers, who was in the rear seat of the Edwards car, testified that he turned his head and looked out the back of the car and saw the Frost vehicle very close to the Edwards sedan, heading into the rear of it, and that at that very instant it struck the Edwards car. He is

positive the Holloway car had not collided with the Frost car before that time. There was no noise to indicate a collision prior to that time. When he saw the Frost car it was bowed down in front as though the brakes were being suddenly applied, a characteristic of a Plymouth car, the kind operated at that time by Frost. Rogers is also positive that when he saw the Frost car it was far enough off the north side of the pavement to strike the Edwards sedan, which it did. The right wheel of the Frost vehicle necessarily had to be more than two feet off the pavement in order to strike the Edwards car. Cotton Fuller, who was on the opposite side of the road preparing to hook the two trucks together, heard the impact, turned his head immediately, and saw the Frost car. He testified at that time the Frost car was as much off the pavement as it was on.

Defendant Frost in his answer alleged that he reduced his speed upon seeing the flares, held out his hand and signalled he was going to stop; and "he further pulled his said truck off the paved portion of the highway onto the right shoulder thereof, that is to say, he had prior to the collision brought the right wheels of his said truck onto the north or right hand shoulder of the highway." He further alleged, " * * that as the said A. S. Frost slowed down, preparatory to bringing his said truck to a stop, he saw ahead of him a car which he believes to have been a Plymouth sedan, parked on the north shoulder of the said highway, and A. S. Frost had brought his truck under such control as to pull up behind the said Plymouth sedan in order to, bring his truck to a complete stop and ascertain if it was safe to go ahead, the said A. S. Frost having observed at that time that there was a truck in the ditch on the south side of the highway, and having observed that there was danger or trouble in the zone marked by the aforesaid flares."

When Frost was called on cross-examination he testified that when 50 to 75 yards east of the Edwards sedan he began slowing down and when within 20 to 50 feet of it he had his right front wheel barely off the north side of the pavement. At that time his car was struck from behind and knocked into the Edwards car. He would give no other estimate of the distance he was east of the Edwards car when struck by the Holloway car. He also testified that he was at that time traveling not more than five miles an hour, but repeated that he had no intention of coming to a stop. His testimony as to the speed of his car, the distance he was from the Edwards sedan when rammed by the Holloway car, and the position of his car as to the pavement, is not corroborated by any other witnesses. In fact, no one seems to have seen him or his car until a moment before the collision. Holloway, who was to his rear, never saw Frost's automobile until the instant of the impact. Frost also testified that as soon as the Holloway car struck his truck, it was knocked into the Edwards sedan instantly.

We are of the opinion that if Frost's truck was as far east of the Edwards car as he claims it was when rammed by the Holloway car, with Frost's machine traveling five miles per hour and Holloway's car 40 to 45 miles per hour, the noise of the impact would have been heard by some of the witnesses, and this impact and the collision thereafter of the Frost car with the Edwards car could have been and would have been distinguishable. Yet, all of the witnesses testify there was only one impact. We are convinced that the impact of the Holloway car with the Frost vehicle, and the latter with the Edwards car, were simultaneous; and under all of the circumstances, we seriously doubt that the Frost truck was traveling as slow as claimed by Mr. Frost. Unless Mr. Frost intended to bring his car to a stop there was no necessity for him to leave the pavement and head into or behind the Edwards car. And he repeatedly testified that he did not intend bringing his car to a stop but intended easing on through. The entire paved portion of the highway was open and clear. There was no other car near the scene in front of the Frost car. His reason for leaving the pavement by placing any of the car wheels on the shoulder is not satisfactorily explained. It is certain, we think, that the right wheels of his car were off the pavement sufficiently far for his car to collide with the Edwards sedan unless he had come to a stop. He was negligent in placing his truck in the position it occupied. There was no emergency confronting him to cause him to so act. The Holloway car was well on the pavement, as shown by the manner in which it came in contact with the Frost truck and, in fact, never at any time left the pavement. Holloway contends he did not see any of the parked cars or trucks or the flares, yet if it had not been for the Frost car he would have passed the scene of the accident without colliding with anything

or anybody. If the Frost vehicle had been on that part of the ·highway it should have occupied, a collision between the Holloway car and the Frost car would not have affected in any way the Edwards sedan and its occupants. The only reasonable explanation Frost could have made for driving his car onto the shoulder was that set out in his answer,—that he intended to stop behind the Edwards car,—and when he repudiates that part of his answer and swears he had no intention of stopping, his action is unexplainable.

■ We are of the opinion that Frost's negligence, as above set out, was at least a proximate cause of the accident and that he is liable for the damage occasioned thereby.

■ Appellants urge here the plea of contributory negligence. They contend that it was negligence for the Edwards car to park on the shoulder of the road within or between the flares, and also ·negligence for Miss Edwards to remain in the car after it was so parked. We fail to see any merit in the plea. In the first place there were no flares out when they parked and possibly would not have been any set out if they, at least some of their party, had not set them out to warn other travelers of their presence. One of their party, Mr. Edwards, had business there and they were waiting for him to get through. They were parked entirely off the highway and, in our opinion, were free of any and all negligence.

■ The only remaining question is that of quantum. Appellants contend the award for the use and benefit of Miss Edwards is excessive; and plaintiff has answered the appeal, seriously contending that the award in his favor, both individually and for the use and benefit of his minor daughter, is inadequate.

Caroline French Edwards was 17 years ·of age at the time of the accident. She had graduated from high school and had attended Northeast Center of Louisiana State University for one year. At the time of the accident she was attending business school, preparing herself for stenography, bookkeeping and other office work. She contends that her physical condition has been permanently impaired by the injuries she received in the collision; that her appearance and posture have likewise been permanently impaired; and that her spine was severely and permanently injured. She contends that the first, second, third and fourth dorsal vertebræ were injured and damaged, with a displacement of the lower spinal processes to the right, with dislocation of the third and fourth dorsal vertebræ; that the injury caused displacement of the uterus, with a marked retroversion thereof which will cause her pain the rest of her life and will affect her health; and that her nervous system has been greatly damaged thereby. She further contends she suffered general contusions and bruises about her entire body; and that she suffered great shock and a general nervous collapse.

The medical testimony clearly shows that Miss Edwards has a misplaced uterus, but it fails to show that this condition was caused by the accident. To the contrary, it is shown that it is improbable that the accident was the cause of it. The record, however, clearly and undoubtedly does disclose that, since the accident, during the periods of menstruation she suffers intensely, and this condition did not exist prior to the accident. It also discloses that she is highly nervous since the accident and prior thereto she was a normal, healthy young lady. She has suffered greatly with her back in the region of the third and fourth dorsal vertebræ and many nights walked the floor all night, being unable to sleep due to pain. She has been under the care of doctors from the date of the accident until time of trial, nearly a year afterwards, and the pain she suffers has become more intense instead of decreasing. She is forced to take sedatives and hypodermics of cocaine and morphine at intervals to relieve her pain. She has been unable to successfully continue her business course, although she tried to do so. She has missed a great part of the time from school due to her injuries, and has been confined to her bed often for a period of days. She is unable to sit and use a typewriter for a period of time longer than fifteen minutes without being in severe pain.

It is agreed by all of the doctors testifying in the case that the third and fourth cervical vertebræ at the base of the neck were displaced as a result of the trauma received in the accident; that the intervertebral cartilages have been damaged, that is, the spaces between the vertebræ, and that traumatic hypertrophic arthritis has developed as a result of the injury and this condition is permanent and painful and will be painful always, and become progressively worse in this locality as time

goes on. There is now no cure for this condition. Although treatment will not cure the existing condition, it will possibly stop the aggravation and lessen the pain. The treatment will be expensive, painful and extend over a long period. The only doctor who estimated the expense of such treatment fixed a minimum of $1,000.

We are of the opinion that Mr. Edwards should have been awarded the amount of $1,000 to cover the necessary future treatment and hospitalization for his minor daughter. And we are also convinced that the award for the use and benefit of his minor daughter is inadequate and should be increased by $1,000.

It therefore follows that the judgment of the lower court is amended by awarding J. M. Edwards, individually, the sum of $1,387.17, and for the use and benefit of his minor daughter, Caroline French Edwards, the sum of $6,000; the amount of $5,150.17 of said judgment against A. S. Frost and Maryland Casualty Company, in solido; and the remainder of said amount, to-wit, $2,237, against A. S. Frost alone. In all other respects the judgment of the lower court is affirmed.